[No. A028633. First Dist., Div. Four. Oct. 29, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
RONALD WILLIAM ALBRIGHT, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Clifford K. Thompson, Jr., Ronald E. Niven and David D. Salmon, Deputy Attorneys General, for Plaintiff and Appellant.

Christopher N. Heard as Amicus Curiae on behalf of Plaintiff and Appellant.

Timothy B. Rien and Kenneth H. Krebs for Defendant and Respondent.

Laurence S. Smith as Amicus Curiae on behalf of Defendant and Respondent.

**OPINION**

**SABRAW, J.**—The People appeal under Penal Code section 1238, subdivision (a)(6), after the trial court modified the jury's verdict convicting defendant of second degree murder (*id.,* § 187 et seq.) to vehicular manslaughter (*id.,* § 192, subd. 3(c)). We conclude that the court erred as a matter of law in construing implied malice under a second degree murder conviction as requiring an awareness and conscious disregard of risk to the life of a *specific* victim. Accordingly, we reinstate the jury verdict and remand for further proceedings.

### I. Facts and Procedure

On a hot July night in 1982 defendant drank at least eight beers before pressing the accelerator to the floor of his old station wagon and speeding between 90-110 miles per hour down Stanley Boulevard in Pleasanton. He passed three automobiles before he entered an intersection and smashed into

17-year-old Danny Rueda's car, killing him instantly in a fiery explosion.[1] None of the various witnesses heard the sound of brakes or saw brake lights, nor did investigators find any pre-impact skid marks.

The police found defendant sitting near his car. He told them many times that he had tried to kill himself and had not meant to hurt anyone else. Later, he told a nurse, "I have killed someone, I have killed someone, it should have been me." He told the ambulance driver he had "put the pedal to the floor" because he had wanted to kill himself, and that when he was going as fast as he could go, the other car pulled out in front of him.

Defendant was charged with murder, felony driving under the influence of alcohol, and felony driving with a blood alcohol level greater than .10 percent. The information also alleged great bodily injury and a prior conviction of driving under the influence.

At a 12-day trial the People established, in addition to the above facts, that defendant's blood alcohol content (.17) significantly slowed his reactions, impaired his judgment, balance and coordination, restricted his vision and made him 35 times more likely to have an accident than an unintoxicated driver. (See generally *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 267-268 [198 Cal.Rptr. 145, 673 P.2d 732].) Defendant conceded the recklessness of his behavior, but argued he was so drunk he could not have harbored the malice required to establish second degree murder.

After denying defendant's motion for acquittal, the court instructed the jury that to find implied malice (and hence second degree murder) it must determine, in essence, that defendant encountered a risk knowing his actions posed a high degree of danger to the life of another. Alternatively, the court explained, the jury could find defendant guilty of mere gross negligence (and hence vehicular manslaughter) if it concluded a reasonable person in defendant's position would have known of the risk created by his action, and if defendant's conduct exhibited so slight a degree of care as to raise a presumption of conscious indifference to the consequences to others. The court repeated these instructions at the jury's request during deliberations,

---

[1] Rueda had been attempting to merge onto Stanley (which, at this point, became First Street) at about 25 miles per hour. Defendant apparently struck him on the driver's side and from behind.

and amplified on those instructions in an effort to assist the jury.[2] The jury requested rereading of testimony of the police officers, the nurse, and the ambulance driver, all of whose respective testimony focused on postaccident conversations with and observations of defendant. The next day the jury returned a verdict convicting defendant on all counts, including second degree murder.

Because it had a reasonable doubt as to existence of malice, however, the court granted defendant's motion to modify the verdict. (Pen. Code, § 1181, subd. 6.) Contrary to its instructions to the jury, the court reasoned that a finding of implied malice could not rest on evidence showing merely that defendant encountered a risk knowing it posed a high probability of danger to human life generally; instead, the court maintained, a finding of implied malice required evidence showing defendant encountered a risk knowing it posed a high probability of danger to the life of the ultimate victim specifically.[3] Because, in the court's view, defendant was totally unaware "of the other vehicle" that was merging in front of him, and because defendant became aware "of that person in front of him" only on impact, and because defendant did not intend to hit "that car," the court concluded implied malice had not been proved beyond a reasonable doubt. Accordingly, the court reduced the judgment to vehicular manslaughter and sentenced defendant to three years in prison.

## II. Analysis

In *People* v. *Watson, supra,* 30 Cal.3d 290, our Supreme Court held that a defendant charged with killing another while driving in an intoxicated condition may be convicted of second degree murder. The malice necessary to establish the crime "may be implied when [the] defendant does an act with a *high probability that it will result in death* and does it with a base

---

[2]The court adopted language from *People* v. *Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279], telling the jury, "[t]he requirement for present culpability for vehicular manslaughter is gross negligence which has been defined as the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [¶] On the other hand, malice may be implied when a person knowing that his conduct endangers the life of another, nonetheless acts deliberately with a conscious disregard for life. [¶] . . . . [¶] Implied malice means a subjective awareness of a higher degree of risk than does gross negligence and it involves an element of wantonness which is absent in gross negligence. [¶] A finding of gross negligence is made by applying an objective test. If a reasonable person in the defendant's position would have been aware of the risk involved, then the defendant is presumed to have such awareness. [¶] However, a finding of implied malice depends upon a determination that the defendant actually appreciated the risk involved and deliberately acted thereafter." The court concluded, "fundamentally . . . you have to decide what is going on in the person's mind. If the person deliberately knowing the risk is acting knowing the risk, that's implied malice."

[3]The court stated that the element of awareness must "involve a known risk to a dangerous specific, not to an abstract."

antisocial motive and with a *wanton disregard for human life.*" (*Id.,* at p. 300, italics added.) In *Watson,* defendant "had driven his car to the establishment where he had been drinking, and he must have known that he would have to drive it later. It also may be presumed that defendant was aware of the hazards of driving while intoxicated. . . . [Citation.] 'One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, *reasonably may be held to exhibit conscious disregard of the safety of others.*' " (*Id.,* at pp. 300-301, italics added.)

Nowhere in its opinion did the *Watson* court suggest implied malice requires awareness of life-threatening risk to a particular person. Instead, implied malice may be found under *Watson,* whenever, inter alia, the facts establish a defendant's awareness and conscious disregard that his conduct poses a high probability of death to *some* person. (*Id.,* at pp. 296, 299-301.) A contrary construction would lead to absurd results,[4] and would conflict with numerous decisions by courts of this and other states. (E.g., *People* v. *Spring* (1984) 153 Cal.App.3d 1199, 1204 [200 Cal.Rptr. 849] ["Malice aforethought neither presupposes nor requires any ill will or hatred of a particular victim."]; *People* v. *Stein* (1913) 23 Cal.App. 108, 115 [137 P. 271] ["malice will be implied, although the perpetrator of the act had no malice against any particular person of the multitude into which he so fired"]; *People* v. *Marcy* (Colo. 1981) 628 P.2d 69, 76 [" '[T]he element of "extreme indifference to human life," by definition, does not address itself to the life of the victim, but to human life generally.' "]; see also *People* v. *Poddar* (1974) 10 Cal.3d 750, 759-760 [111 Cal.Rptr. 910, 518 P.2d 342]; *People* v. *Conley* (1966) 64 Cal.2d 310, 321-322 [49 Cal.Rptr. 815, 411 P.2d 911]; Perkins & Boyce, Criminal Law (3d ed. 1982) 59-60; LaFave & Scott, Criminal Law (1972) 543.)

We conclude the court erred as a matter of law in modifying the jury verdict here. Lest there be any question about it, we note in closing that the jury's verdict is amply supported by the record. Intoxicated and possibly attempting suicide, defendant bolted at about 100 miles per hour through a residential area, passing three cars but smashing into the last. Defendant knew other people were on the road, and must have known of the high probability he would cause death if he continued his conduct and hit another car. His gamble that no one would enter his path killed a young man; it also rendered him guilty of second degree murder.

---

[4]For example, a defendant who caused death by discharging a gun into a moving automobile, or by purposefully driving his car on to a crowded sidewalk, could not be convicted of second degree murder under the trial court's theory unless it could be said beyond a reasonable doubt he intended harm to the ultimate victim specifically.

The court's modification and judgment is vacated, the jury's verdict is reinstated, and the case is remanded for proceedings consistent with this opinion.

Anderson, P. J., and Channell, J., concurred.

A petition for a rehearing was denied November 26, 1985, and appellant's petition for review by the Supreme Court was denied January 16, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.