[No. B045022. Second Dist., Div. Five. May 30, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRANCE RENE DAVID, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald E. de Nicola and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—While driving under the influence of PCP (phencyclidine), appellant Terrance Rene David collided with another vehicle, killing its two occupants. By nonjury trial appellant was convicted of two counts of second degree murder (Pen. Code, §§ 187, 189; *People* v. *Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279]) and was sentenced to concurrent terms of 15 years to life in state prison.

### FACTS

#### *The Collision*

The collision occurred about 7 p.m. on Thanksgiving evening, Thursday, November 27, 1986. Appellant was first observed by a deputy sheriff as appellant sped southbound at 60 to 70 miles per hour on Avalon Boulevard in an unincorporated area of Los Angeles County. The posted speed limit was 40 miles per hour. Appellant ran a red light at El Segundo Boulevard. A woman in the crosswalk with two children and a shopping cart hurriedly took evasive action to avoid being hit. The deputy sheriff began pursuit. Appellant continued traveling southbound on Avalon at 60 to 75 miles per hour through a primarily residential area. Appellant ran a red light at 135th Street. Several times he passed slower southbound traffic by swerving over the double-double yellow center lines into the northbound lanes, forcing northbound traffic out of its lanes.

Appellant continued on Avalon at 60 to 80 miles per hour and ran a red light at Rosecrans Avenue. He again swerved over the double-double yellow center lines, forcing northbound traffic to pull over to the right to avoid a collision. Appellant then ran a red light at Compton Boulevard. At some point during the pursuit the deputy sheriff activated his red light, flashing amber lights and rotating lights.

Appellant continued southbound on Avalon at 70 to 80 miles per hour and approached the next major intersection, Redondo Beach Boulevard. The victims' car was traveling westbound on Redondo Beach Boulevard through the intersection at 25 to 35 miles per hour, with the green light. Appellant ran the red light and struck the victims' vehicle with explosive force, killing both the occupants, Gladys Coral and Lovell Hunter. Appellant's car spun around, traveled up the curb, struck a building, and ricocheted back into the street, coming to rest along the center divider.

Appellant was alone in the vehicle. A strong odor of PCP emitted from the vehicle and appellant's breath and person. Appellant was examined by several officers and found to be under the influence of PCP. Blood and urine samples taken from appellant following his arrest confirmed that appellant was under the influence of PCP.

### Appellant's Prior Accidents, Convictions and Education

Appellant had two prior accidents driving under the influence of PCP. These resulted in two criminal convictions and appellant's attendance at an education program involving the risks of driving while under the influence of alcohol or other intoxicants.

The first incident occurred about 10 p.m. on May 19, 1985, at the intersection of Hawthorne and El Segundo Boulevards, which was cordoned off for investigation of a traffic accident. The intersection was well lit by flares and police units with activated lights. Appellant, traveling at a high rate of speed westbound in the eastbound lane of El Segundo Boulevard, passed through the intersection, nearly striking an officer. Several police units activated their emergency lights and pursued appellant, at about 70 miles per hour, down El Segundo Boulevard. Appellant continued traveling the wrong way, forcing oncoming vehicles out of the way. After a two- to three-mile chase, two police vehicles surrounded appellant. Appellant tried to pass the front vehicle but struck a large tree in the center divider. Appellant had a PCP cigarette in his vehicle and was under the influence of PCP. He was subsequently convicted of driving under the influence. (Veh. Code, § 23152, subd. (a).)

As a result of this conviction appellant attended a 90-day first offender education program between August 1985 and January 1986. The education program stressed the dangers of driving a motor vehicle under the influence of alcohol or any other intoxicant.

The second incident occurred on the evening of May 19, 1986. Appellant was traveling northbound on Compton Boulevard near 49th, when he col-

lided with a parked car on the left side of the street. Appellant was under the influence of PCP. As a result of this incident appellant was convicted of driving under the influence and driving with a suspended license. (Veh. Code, §§ 23152, subd. (a), 14601.1.)

At the time of the fatal Thanksgiving 1986 collision, appellant was driving with a suspended license.

### *Defense*

Appellant testified he had no recollection of driving. He walked from his mother's house to a liquor store. As he walked home he met a man he recognized, and asked for a cigarette. The man gave appellant a "Kool" cigarette.[1] Appellant took two or three puffs. The next thing appellant remembered was waking up in the hospital.

The car appellant was driving at the time of the collision was his mother's. Appellant testified he did not know how he got the keys. Appellant's mother testified she kept the keys in her purse on her bedroom dresser. She went to sleep shortly after appellant left for the liquor store.

A psychiatrist specializing in addiction and substance abuse testified that PCP impairs a user's judgment and motor skills. In the expert's opinion PCP is likely to distort the user's perception of reality; the user may do dangerous things the user would not otherwise do. However, a person under the influence can be conscious, aware of what he is doing, can perceive and interact with the environment, while at the same time not encoding memory and thus being unable to remember the events afterwards. In the opinion of the psychiatrist, and also of an expert witness for the prosecution in rebuttal, an experienced PCP user would feel effects almost immediately from a few puffs or "hits" on a PCP cigarette.

### DISCUSSION

In part I, the published portion of this opinion, we conclude substantial evidence supports the finding of implied malice and second degree murder. In part II, the nonpublished portion, we find no reversible error in the award of custody credit on appellant's sentence.

---

[1] A prosecution expert testified a common way of ingesting PCP is to smoke a "Kool" cigarette which has been dipped in liquid PCP.

I

SUFFICIENCY OF EVIDENCE

In *People* v. *Watson, supra,* 30 Cal.3d 290, the Supreme Court held that in appropriate circumstances homicide caused by a drunk driver may be prosecuted as second degree murder. ■ Second degree murder based on implied malice is shown when a person does an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that the conduct endangers the life of another and who acts with conscious disregard for life. (*Id.* at pp. 296, 300.) Implied malice requires a determination that the accused actually appreciated the risk involved. (*Id.* at pp. 296-297.) A later case stated in more everyday language that the state of mind for implied malice is " 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.' " (*People* v. *Olivas* (1985) 172 Cal.App.3d 984, 988 [218 Cal.Rptr. 567].)

Since *Watson,* four cases have upheld murder convictions for death caused by driving under the influence. (*People* v. *Olivas, supra,* 172 Cal.App.3d 984; *People* v. *Albright* (1985) 173 Cal.App.3d 883 [219 Cal.Rptr. 334]; *People* v. *McCarnes* (1986) 179 Cal.App.3d 525 [224 Cal.Rptr. 846]; *People* v. *Murray* (1990) 225 Cal.App.3d 734 [275 Cal.Rptr. 498].)[2]

■ Appellant contends the evidence in this case is insufficient to establish implied malice. He supports this argument by pointing to specific evidence which was present in those cases which he contends is missing here. This argument is unpersuasive.

Appellant points out that in *People* v. *Watson, supra,* 30 Cal.3d at page 300, the defendant drove to a bar and there became intoxicated, knowing that he would thereafter drive. Appellant contends that in this case there is no evidence appellant planned to drive when he consumed the PCP cigarette. Although contending this is significant, appellant concedes it is not a necessary element. ■ In *People* v. *Olivas, supra,* 172 Cal.App.3d at pages 988 to 989, the court stated, "The criminal act underlying vehicular murder is not use of intoxicating substances in anticipation of driving, but is driving under the influence with conscious disregard for life."

■ There was substantial evidence appellant drove knowing that he was under the influence of PCP. Appellant's own testimony and the opinions

[2]Another case, *People* v. *Ricardi* (1990) 221 Cal.App.3d 249 [270 Cal.Rptr. 425], reversed a murder conviction for instructional error. But in permitting a retrial, the court upheld the sufficiency of evidence of implied malice. (*Id.* at p. 260, fn. 5.)

of appellant's expert and the prosecution rebuttal expert showed that appellant felt effects of PCP immediately after smoking the cigarette. In light of appellant's prior experience with PCP, he must have realized he was under the influence. Appellant thereafter took the deliberate steps of going to his mother's bedroom and into her purse to obtain the keys to her car, which he was driving at the time of the collision. He must have known that he was under the influence when he chose to drive.

There can be no doubt appellant knew from prior experience that driving under the influence of PCP is dangerous to life. ■ Prior convictions and exposure to mandatory educational programs are admissible to show the accused's awareness of the life threatening risks of driving under the influence. (*People* v. *McCarnes, supra,* 179 Cal.App.3d at p. 532; *People* v. *Brogna* (1988) 202 Cal.App.3d 700, 708-710 [248 Cal.Rptr. 761]; *People* v. *Murray, supra,* 225 Cal.App.3d at pp. 744-745.) ■ The particular circumstances surrounding appellant's prior convictions demonstrated the point to him even more vividly. In those two incidents appellant had actual collisions. (*People* v. *Murray, supra,* at p. 745 [prior startling incident]; *People* v. *Ricardi, supra,* 221 Cal.App.3d at p. 260, fn. 5 [prior accident injured another driver].)

Appellant next attempts to contrast with other cases his driving pattern immediately before the accident. He points out that in *Watson, supra,* 30 Cal.3d at page 301, the defendant nearly collided with another vehicle and skidded to a stop before resuming driving. In *Olivas, supra,* 172 Cal.App.3d at page 987, the defendant collided with another car before resuming driving. Here, appellant contends, appellant had no prior collision and made no attempt to brake before the collision.

There is ample evidence, however, to support the conclusion appellant knew while he was driving that his conduct was dangerous to life and consciously disregarded that risk. In *People* v. *McCarnes, supra,* 179 Cal.App.3d at pages 533, 535, there was no preliminary collision but the court held the defendant's awareness was shown by his pattern of reckless high speed passing maneuvers on two-lane roads and traveling on the dirt shoulder. In *People* v. *Albright, supra,* 173 Cal.App.3d at page 887, the defendant merely passed three cars, but the court held this showed he "knew other people were on the road." In *People* v. *Murray, supra,* 225 Cal.App.3d at page 747, the defendant had numerous near misses with other automobiles and the concrete center divider. The court stated, "The absence of specific evidence that appellant braked to avoid any of these near collisions does not necessarily indicate appellant was unaware of them. It shows only that appellant was able to avoid them by steering or changing acceleration."

Here appellant several times crossed the double-double yellow center lines into oncoming traffic, forcing oncoming traffic out of its lanes to avoid a collision. Appellant had a near collision with a woman in a crosswalk with two children and a shopping cart. Appellant was pursued by a sheriff's vehicle with red light and flashing amber lights. From these events the trier of fact could infer appellant's awareness of the risk.

Appellant contends there is no substantial evidence that he comprehended the risk despite his intoxication on PCP. There is no merit to this argument. The pattern of appellant's driving showed appellant's awareness of the surroundings. Appellant passed a number of cars by going around them. He traveled a considerable distance, through several major intersections (El Segundo, 135th, Rosecrans and Compton) before reaching the final major intersection where the collision occurred (Redondo Beach). Even appellant's expert testified that under the influence of PCP a person perceives the environment, interacts with the environment, and is conscious and aware of what the person is doing, despite having no memory of the incident later. The trier of fact could infer appellant's awareness of the risk from the distance he drove. In *People* v. *Murray, supra,* 225 Cal.App.3d at pages 748-749, the court held the jury could reject as unreasonable a defense expert's opinion that the defendant could have driven a long distance in a robot-like or reflexive manner without being aware of the risks to human life involved.

Substantial evidence supports the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

III

The judgment is affirmed.

Turner, P. J., and Boren, J., concurred.

*See footnote, *ante,* page 1109.