[No. B062961. Second Dist., Div. Seven. Dec. 14, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS TALAMANTES, Defendant and Appellant.

**Counsel**

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**WOODS (Fred), J.**—Driving under the influence of alcohol, appellant struck a car and killed its driver. A jury convicted him of second degree murder (Pen. Code, § 187. Unless otherwise noted, statutory references are to the Penal Code) and other related charges. On appeal he contends: (1) there is insufficient evidence of implied malice to sustain the murder conviction, (2) the trial court committed instructional error, and (3) he was prejudiced by wearing jail clothing during the trial. We find no error and affirm the judgment.

### Procedural and Factual Background

Appellant was charged with second degree murder (§ 187, count I), gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count II), driving under the influence of alcohol and causing great bodily injury (Veh. Code, § 23153, subd. (a); count III), and driving while having .08 percent blood alcohol and causing great bodily injury (Veh. Code, § 23153, subd. (b); count IV). Two prior driving-under-the-influence convictions were alleged (Veh. Code, § 13202.5; counts III and IV).

Appellant pleaded not guilty and denied the allegations. His motion to bifurcate trial of the allegations was granted, and he then admitted both allegations. A jury convicted appellant of all four counts.

Appellant's motion to modify his conviction of second degree murder was denied. The trial court sentenced appellant, on count I, to state prison for 15 years to life, and stayed the 2-year state prison terms on counts III and IV. Count II, on the People's motion, was dismissed.

On Tuesday, April 9, 1991, about 4 a.m. John Forbes was on his way to work as a shuttle driver for Prime Time Shuttle when he noticed a dark Audi without lights. Mr. Forbes had exited the 5 Freeway onto Sunland Boulevard when the Audi passed him, going west on Sunland at least 45 miles per hour in a posted 30 mile-per-hour zone. Appellant was the driver and sole occupant of the Audi.

The Audi passed San Fernando Road and when it crossed some railroad tracks it went airborne. Some distance ahead, a yellow Volkswagen, with its lights on, and plainly visible, entered Sunland from a gas station and proceeded east. The Audi continued at a high rate of speed and, while on the wrong side of the road, struck the Volkswagen on the driver's side. A police officer a block or two away heard the collision and immediately responded to the scene.

Appellant was behind the wheel of the Audi, obviously intoxicated but not seriously injured.

Twenty-four-year-old Todd Makowski was pinned in his Volkswagen and suffered major injuries. He died on the operating table at 7:20 a.m.

A police investigation determined the Audi had left 8 to 10 feet of pre-impact skid marks and was moving at 45 miles per hour at the time of the collision.

On the front floorboard of the Audi there were three empty twelve-ounce beer containers—two cans and one bottle.

Appellant was arrested and jailed. Two blood samples were taken from him. The 8:30 a.m. sample registered .26 percent blood alcohol. The 5:12 a.m. sample registered .31 percent blood alcohol. An expert testified that at 4 a.m., the time of the accident, appellant's blood alcohol would have been .32 percent.

The director of a court referral driving-under-the-influence course testified that appellant attended the 10-week course from November 1989 to March

1990. The course emphasized the dangers of driving under the influence and explained the effects of alcohol on the body. It directly dealt with injuries and death caused by drunk drivers. Appellant's class was in Spanish and had 12 to 15 attendees. A portion of a course videotape, "So Long Pal," was played for the jury.

There was no defense evidence.

## DISCUSSION

1. *Appellant contends there is insufficient evidence of implied malice to sustain the murder conviction.*

The seminal case on drunk-driving-murder is *People* v. *Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279]. It stated: "We have said that second degree murder based on implied malice has been committed when a person 'does an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life . . . .' Phrased in a different way, malice may be implied when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life." (*Id.* at p. 300.) (Internal quotation marks and citations omitted.) *Watson* continued: "Based upon our independent review of the record, we believe that there exists a rational ground for concluding that defendant's conduct was sufficiently wanton to hold him on a second degree murder charge. The facts upon which we base this conclusion are as follows: Defendant had consumed enough alcohol to raise his blood alcohol content to a level which would support a finding that he was legally intoxicated. He had driven his car to the establishment where he had been drinking, and he must have known that he would have to drive it later. It also may be presumed that defendant was aware of the hazards of driving while intoxicated." (*Ibid.*)

Appellant focuses upon the second *Watson* factor and contends the evidence of implied malice is insufficient because "[t]here was no evidence appellant knew at the time he made the decision to drink that he was going to be driving." Appellant is mistaken.

There is little to distinguish the instant case from *Watson* with respect to the decision to drink and drive. In *Watson* the defendant "consumed large quantities of beer in a Redding bar." (30 Cal.3d at p. 293.) Appellant

consumed even larger quantities of beer[1] In *Watson* the fatal driving occurred *in Redding* an hour and a half after the defendant left the Redding bar. (*Ibid.*) *Watson* is silent regarding *how* the defendant "left" the bar, whether by driving his car or by some other means. More importantly, *Watson* is silent regarding what the defendant did during the hour and a half after he left the bar and before the accident. In the instant case the circumstances suggest, at least as strongly as in *Watson*, that appellant "must have known that he would have to drive" (*id.*, at p. 300) after drinking. Appellant's .32 percent blood-alcohol level indicates prolonged drinking, time enough to consume approximately 12 to 15 beers. Since appellant was driving alone at 4 a.m., it is a reasonable inference that when he "left" wherever he had been drinking, his car was available and he had intended to drive it.

But even if, when appellant was drinking, he did not know he would have to drive—still the evidence of implied malice is sufficient to sustain the judgment. (*People v. Olivas* (1985) 172 Cal.App.3d 984, 988 [218 Cal.Rptr. 567].)

The cases have relied upon some or all of the following factors in upholding drunk-driving-murder convictions: (1) a blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving. In the instant case there was substantial evidence of all four factors.

We find the instant evidence of implied malice indistinguishable from other cases upholding drunk-driving-murder convictions. (*People v. David* (1991) 230 Cal.App.3d 1109 [281 Cal.Rptr. 656]; *People v. Murray* (1990) 225 Cal.App.3d 734 [275 Cal.Rptr. 498]; *People v. Perez* (1989) 212 Cal.App.3d 395 [260 Cal.Rptr. 474]; *People v. Brogna* (1988) 202 Cal.App.3d 700 [248 Cal.Rptr. 761]; *People v. McCarnes* (1986) 179 Cal.App.3d 525 [224 Cal.Rptr. 846]; *People v. Albright* (1985) 173 Cal.App.3d 883 [219 Cal.Rptr. 334]; *People v. Olivas, supra,* 172 Cal.App.3d 984.) Appellant cites no case where a drunk-driving-murder conviction has been reversed for insufficient evidence.

Appellant's contention is not well taken.

---

[1]Watson's blood alcohol, 30 minutes after the accident, was .23 percent; appellant's blood alcohol about an hour after the accident was .31 percent. Appellant had apparently been drinking beer because two empty beer cans and one empty beer bottle were found in his car.

*2. Appellant contends the trial court committed instructional error.*

■ The trial court instructed the jury about implied malice in accordance with CALJIC No. 8.11.[2] It also instructed the jury about voluntary intoxication and specific intent in accordance with CALJIC No. 4.21 (1989 rev.).[3] Appellant does *not* contend either instruction misstates the law.

After they were instructed, and during their deliberations, the jury asked the trial court this question: "Are we supposed to apply the implied malise [*sic*] portion of the law at the point in time when the defendant was intoxicated or prior?"

After first discussing this question with counsel, the trial court informed the jury that its question "may well be answered by . . . a combination of instruction 8.11 and 4.21." The court added: "That is all I can tell you at the moment, so why don't you go back and see if anybody has understood what I said. [¶] Then if you need some additional assistance, why, then we will come here . . . ." The jury did not seek additional assistance regarding its question.

Appellant contends that in light of the jury's question, CALJIC Nos. 8.11 and 4.21 were inadequate and "the court should have instructed the jury to apply the voluntary intoxication instruction [CALJIC No. 4.21] both to the time appellant decided to drive, and to the time appellant chose to drink." We disagree.

The trial court had a sua sponte duty to instruct the jury on applicable general principles of law. (*People* v. *Kimble* (1988) 44 Cal.3d 480, 503 [244

---

[2]The instruction reads: " 'Malice' " may be implied.

"Malice is implied when:

"1.  The killing resulted from an intentional act.

"2.  The natural consequences of the act are dangerous to human life, and

"3.  The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

"When it is shown that a killing resulted from the intentional doing of an act with implied malice, no other mental state need be shown to establish the mental state of malice aforethought.

"The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.

"The word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

[3]The instruction reads: "In the crime of second degree murder of which the defendant is accused in Count I of the information, a necessary element is the existence in the mind of the defendant of the mental state of malice aforethought.

"If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether defendant had such mental state.

"If from all the evidence you have a reasonable doubt whether the defendant formed such mental state, you must find that he did not have such mental state."

Cal.Rptr. 148, 749 P.2d 803].) It did so. "[I]t was defendant's obligation to request any clarifying or amplifying instructions . . . ." (*Ibid.*) Appellant made no such request to the trial court and "error cannot now be predicated upon the trial court's failure to give them on its own motion." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].)

Appellant's reliance upon *People* v. *Ricardi* (1990) 221 Cal.App.3d 249 [270 Cal.Rptr. 425] is misplaced. *Ricardi* found error in the trial court's omission of CALJIC No. 4.21, an instruction given in the instant case.

3. *Appellant contends he was prejudiced by wearing jail clothing during the trial.*

■ "[A] criminal defendant is entitled to be tried in ordinary clothing." (*People* v. *Taylor* (1982) 31 Cal.3d 488, 494 [183 Cal.Rptr. 64, 645 P.2d 115].) But "the right may be waived by a failure to timely object or otherwise bring the matter to the court's attention." (*Id.* at p. 495.)

■ Nor does a failure to request civilian clothes for appellant suggest that defense counsel rendered ineffective assistance to appellant. "[T]here may be instances where for tactical reasons the defendant may wish to be tried in jail garb. [Citation.] Recognizing that the defendant is entitled to be tried in ordinary clothing, an attorney may nevertheless decide, based on the peculiar circumstances of an individual case, not to exercise that right." (*People* v. *Taylor, supra,* 31 Cal.3d at p. 496.)

We find no error.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 11, 1993.