Filed 4/27/16  P. v. Rinke CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063656 |
| v. | (Super.Ct.No. FSB1201172) |
| JESSE TYLER RINKE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Modified and affirmed with directions.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson, Kristine A. Gutierrez and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jesse Tyler Rinke stole a vehicle and then fled from law enforcement.  During the pursuit, defendant entered a freeway driving into oncoming

1

traffic and collided with a motorcycle, causing the motorcyclist's death. Following a jury trial, defendant was convicted of second degree murder and evading an officer causing death. On appeal, defendant contends that (1) the evidence is insufficient to prove the elements of felony evading causing death; (2) the sentence imposed on the felony evading causing death should be stayed pursuant to Penal Code section 654; (3) the trial court erred in admitting evidence of his prior felony evading conviction under Evidence Code sections 1101, subdivision (b), and 352; (4) the trial court abused its discretion in admitting a photograph of the deceased victim; and (5) the trial court erred in imposing a one-year sentence for a prior prison term enhancement (Pen. Code, § 667.5, subd. (b)). We agree that the challenged one-year sentence must be stricken. In all other respects, we affirm the judgment.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. The Charges.

The San Bernardino County District Attorney filed a first amended information charging defendant with murder (Pen. Code, § 187, subd. (a); count 1), vehicular manslaughter (Pen. Code, § 192, subd. (c)(1); count 2), evading an officer causing death (Veh. Code, § 2800.3, subd. (b); count 3), and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 4). As to count 2, the information alleged that after committing the offense, defendant fled the scene of the crime (Veh. Code, § 20001, subd. (c)). The information also alleged that defendant suffered a conviction in case No. FSB055041 (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), a serious felony conviction in case No. FSB055041 (Pen. Code, § 667, subd. (a)(1)), and two prison

2

convictions, one in case No. FSB055041, and one in case No. FSB054533 (Pen. Code, § 667.5, subd. (b)).

**B. The People's Case.**

On January 22, 2011, in San Bernardino County, defendant stole Winston John Martin, Jr.'s truck, which led to pursuit by San Bernardino Police Officer Jesse Joyce in his marked patrol vehicle with his lights and sirens activated. Defendant pulled over. Officer Joyce and defendant made eye contact through their car mirrors. When Officer Joyce opened his car door and put his foot outside, defendant sped away. Officer Joyce pursued defendant with the patrol vehicle's lights and sirens on. Defendant ran through two red lights and eventually turned onto Muscupiabe Drive. He drove over the island and entered the freeway offramp in the wrong direction. Officer Joyce testified that he terminated his pursuit. However, he later explained that while he did not follow defendant onto the freeway, the officer did proceed to backtrack and enter the southbound Interstate 215 (I-215) freeway in an effort to keep his eyes on defendant's vehicle.

Christopher Wilson was driving northbound on the I-215 freeway when an ambulance driving in front of him served to the right. Wilson saw a white truck driving against traffic coming right at him and immediately swerved to the right. From his rearview mirror, Wilson saw the motorcyclist who was driving behind him get ejected from his bike, project through the air, and land on the dirt shoulder. Wilson pulled over and ran to the motorcyclist, but there was no pulse. Wilson covered the victim's body with a blanket and then walked over to the white truck, but the driver was gone.

3

Surveillance footage from a Verizon facility located adjacent to the I-215 freeway showed an individual running from the freeway through Verizon's parking lot.

Defendant called a friend for a ride. Defendant explained to the friend that he had stolen a truck, was pursued by police, got on the freeway going the wrong direction, fatally hit a motorcyclist, and then ran from police, using a storm drain near the freeway.

**C. The Defense.**

Defendant testified that he took the truck, intending to drive it to another location. When Officer Joyce pulled him over, defendant thought that he could not go back to jail, so he sped away. Defendant planned to "make a couple turns, evacuate the vehicle, and run." Defendant denied intending to hurt anyone. When he entered the offramp to the freeway, defendant admitted seeing one-way signs and knowing it was a one-way road; however, he claimed that he believed it was a road that led to industrial buildings. He claimed he was not familiar with the area; however, he had lived in the area for some time and had gone to high school near the area of the pursuit. Defendant acknowledged that a one-way sign meant it would be illegal to drive the wrong way on a street. To get to the offramp, defendant had to drive over a raised center divider and cross a lane with traffic coming in the opposition direction.

Defendant testified that when he got on the freeway, he changed lanes so that he was driving in the lane that was closest to a wall. Defendant admitted that by doing this, the only option for vehicles traveling in that lane was to swerve into the lane to the right of them, putting them in front of oncoming traffic and in danger of being hit by other vehicles coming in that direction. Defendant recognized that the motorcyclist did not

4

have the same option. By getting onto the freeway in the wrong direction, changing lanes, heading directly towards the motorcyclist, defendant admitted he basically cornered the motorcyclist and put him in a situation where he could not get out of defendant's way.

Defendant testified that after the collision, he exited the truck and ran to get away from the area. He claimed he did not realize the severity of the collision until he read the newspaper the next day.

**D. The Verdict and Sentence.**

A jury convicted defendant on all counts and allegations. Defendant admitted the prior allegations. The trial court sentenced defendant to an indeterminate term of 30 years to life on count 1, and a consecutive determinate term of 27 years on count 3. Pursuant to Penal Code section 654, the trial court stayed the sentences on counts 2 and 4, and the attendant enhancements.

## II. DISCUSSION

**A. The Evidence Supports Defendant's Conviction of Evading an Officer Causing Death.**

Defendant contends there is insufficient evidence to support his conviction of evading a pursuing officer and causing the death of the victim, because the evidence shows that Officer Joyce was no longer actively pursuing defendant at the time of the collision.

5

*1. Standard of Review*

In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] . . . 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

*2. Analysis*

Subdivision (b) of Vehicle Code section 2800.3 provides: "Whenever willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death to a person, the person driving the pursued vehicle, upon conviction, shall be punished by imprisonment in the state prison for a term of 4, 6, or 10 years." Vehicle Code section 2800.1, subdivision (a) provides: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is

6

distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform."

Here, by his own admission, defendant knew he was being pursued by Officer Joyce and admitted that he acted in an attempt to avoid capture. The fact that Officer Joyce, moments before the crash, terminated the pursuit (by not following defendant onto the freeway) does not change our conclusion that all of the elements necessary to support a conviction of felony evading an officer exist, particularly given the evidence summarized above. At most, Officer Joyce's decision not to follow defendant onto the freeway created an evidentiary conflict that the jury resolved against defendant. (See *People v. Maury* (2003) 30 Cal.4th 342, 403.) In any event, we note from the record that defendant himself still believed he was being pursued by Officer Joyce at the time of the collision, inasmuch as he was driving into oncoming traffic on a freeway to escape the police, and he testified that his goal was to elude capture. Moreover, Officer Joyce did continue to pursue defendant by backtracking and entering the southbound I-215 in an effort to keep his eyes on defendant's vehicle. Within one minute, the officer heard a radio call that an accident occurred.

In short, the evidence was sufficient to show that defendant was being "pursued" at the time of the collision for purposes of Vehicle Code section 2800.3, subdivision (b).

**B. Penal Code Section 654 Does Not Apply to Count 3.**

The trial court imposed a consecutive sentence on count 3, felony evading an officer. On appeal, defendant contends that this sentence should have been stayed under

7

Penal Code section 654, because the facts underlying it overlap with the facts for the second degree murder conviction, such that both counts were committed pursuant to the same criminal objective. We disagree.

*1. Applicable Law*

Under Penal Code section 654, a defendant may be punished only once for an act or omission that is punishable in different ways by different provisions of law. (*People v. Jones* (2012) 54 Cal.4th 350, 353.) Where violations of different provisions of law are premised on multiple acts, a course of conduct is implicated, and the intent and objective test governs in determining whether Penal Code section 654 applies. (*Jones*, *supra*, at p. 359.) "If [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639; see *People v. Perez* (1979) 23 Cal.3d 545, 551.) "'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.'" (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) A trial court's implied finding that a defendant harbored a separate intent and objective for each offense is a question of fact and will be upheld on appeal if it is supported by substantial evidence. (E.g., *People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

8

*2. Analysis*

Here, evading pursuing police was not necessary or incidental to defendant's conviction of second degree murder. When defendant fled after being stopped by Officer Joyce, his initial intent was to evade the officer. He testified that in speeding away, he planned to "make a couple turns, evacuate the vehicle, and run." However, at some point, defendant decided to enter the freeway and drive into oncoming traffic. As the record shows, his efforts to evade Officer Joyce were temporarily successful, since they prevented the officer from directly following defendant onto the freeway. Yet despite the fact that Officer Joyce declined to follow defendant onto the freeway, defendant chose to continue to drive into the oncoming traffic. He also chose to drive in the lane that was closest to a wall, forcing vehicles traveling in that lane to swerve into the lane to the right of them, putting them in front of oncoming traffic and putting them in danger of being hit by other vehicles coming in that direction. As for the victim who was on a motorcycle, defendant admitted that he basically cornered the victim, putting him in a situation where he could not get out of defendant's way.

Defendant's conduct of driving on the freeway into oncoming traffic shows a separate intent from evading the police—the intent to continue a course of reckless driving without regard for the safety of others. "[A]t some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere successful commission of the original crime." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191.) Indeed, it was defendant's action of driving onto the freeway into oncoming traffic that

9

supported the jury's finding of implied malice. Evading Officer Joyce was not the means of perpetrating the crime of second degree murder. Thus, substantial evidence supports the trial court's imposition of separate sentences for both defendant's second degree murder conviction and his evading an officer causing death conviction.

## C. Admission of Prior Uncharged Conduct Was Proper.

Defendant challenges the trial court's decision to allow the prosecution to introduce evidence of his 2006 charge of felony evading. He argues that because it is common knowledge that evading the police is dangerous, the evidence "did not establish that [defendant] was more aware of the extreme danger of evading the police as a result of the prior conviction, or that he was anymore [*sic*] aware of the danger of evading the police than any other person." He further asserts that the evidence was unduly prejudicial.

### 1. Additional Background Facts

Prior to trial, the prosecution moved to admit evidence that defendant had previously been charged with felony evading in order to show knowledge. Over defendant's objection, the trial court granted the motion for the limited purpose of showing that defendant knew how extremely dangerous it was to evade the police. The court reasoned the evidence showed that defendant had notice of the dangers of evading police because he had engaged in such conduct previously, causing a collision resulting in his conviction and prison sentence. Furthermore, the fact that defendant had engaged in the same conduct in the current case showed a reckless disregard for human life, which

10

goes to the intent element of murder and felony evading. The trial court concluded that any undue prejudice was outweighed by the probative value.

Thus, the jury heard that on March 15, 2006, Detective Robert Wilson, in a marked patrol unit with lights and sirens activated, engaged in a high speed pursuit of defendant, who was driving a truck. The detective followed defendant into a cul-de-sac. Defendant admitted that he could have surrendered; however, he chose to accelerate "head on" towards the officer's patrol vehicle, hitting it and pushing it out of the way. The detective continued his pursuit until defendant yielded approximately half a mile away. Defendant was charged with felony evading, assault with a deadly weapon, and grand theft auto. He pled guilty to assault on a peace officer.

The jury was instructed with CALCRIM No. 375, which described the purpose for which defendant's prior felony evasion conduct was admitted and the standard by which such conduct must be proved before it could be considered. The jury was informed that the felony evading could only be used "for the limited purpose of deciding whether or not, one, the defendant acted with the intent to evade in Count 3 or the lesser included offense therein; and/or two, the defendant knew at the time that his actions were dangerous to human life under Element 3 of the implied malice analysis in Count 1." Regarding implied malice, the jury was instructed that "[t]he defendant acted with implied malice if, one, he intentionally committed an act; two, the natural and probable consequences of the act were dangerous to human life; three, at the time he knew his act was dangerous to human life; and four, he deliberately acted with conscious disregard for human life."

11

## 2. *Applicable Law*

"Evidence Code section 1101, subdivision (b), permits the admission of other-crimes evidence against a defendant 'when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act.' [Citation.] '[Evidence Code] [s]ection 1101 prohibits the admission of other-crimes evidence for the purpose of showing the defendant's bad character or criminal propensity.' [Citation.] As with other circumstantial evidence, its admissibility depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence or absence of some other rule requiring exclusion. [Citation.]" (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203.)

". . . The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 371.)

We review a trial court's ruling under Evidence Code sections 1101, subdivision (b), and 352 for abuse of discretion. (*People v. Davis* (2009) 46 Cal.4th 539, 602.) We generally find reversible error only if the court's exercise of discretion was arbitrary, capricious, and resulted in a miscarriage of justice. (*People v. Williams* (2009) 170 Cal.App.4th 587, 606.)

12

*3. Analysis*

Here, defendant's 2006 felony evading conduct was offered by the prosecution as evidence that defendant was subjectively aware of the risk to human life associated with evading police. The use of such evidence for this purpose is based upon the theory of vehicular homicide approved in *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), superseded by statute on another point as stated in *People v. Bradford* (1994) 22 Cal.App.4th 433, 439. In *Watson*, our state Supreme Court held that a person whose reckless driving kills another can be charged with second degree murder if there is sufficient evidence of implied malice. Implied malice, the court explained, can be shown "when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life." (*Watson*, *supra*, at p. 296.) The court distinguished implied malice from gross negligence—the level of culpability required for vehicular manslaughter. (Pen. Code, § 192, subd. (c)(1).) "A finding of gross negligence is made by applying an *objective* test: if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. [Citation.] However, a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard." (*Watson, supra*, at pp. 296-297.)

Since *Watson*, numerous courts have upheld the use of evidence of prior driving conduct to show implied malice in vehicular second degree murder cases. (See, e.g., *People v. Ortiz* (2003) 109 Cal.App.4th 104, 116 (*Ortiz*); *People v. Brogna* (1988) 202 Cal.App.3d 700, 706-710; *People v. McCarnes* (1986) 179 Cal.App.3d 525, 532-533;

13

*People v. Murray* (1990) 225 Cal.App.3d 734, 745-746; *People v. Eagles* (1982) 133 Cal.App.3d 330, 340.) As stated by the *Ortiz* court: "[C]ourts have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway—whether provoked by the use of alcohol, of another intoxicant, by rage, or some other motivator—sensitizes him to the dangerousness of such life-threatening conduct." (*Ortiz, supra*, at p. 112.)

Here, contrary to the arguments set forth in defendant's brief, the evidence is relevant, probative, not cumulative, and not unduly prejudicial. As the cases cited above make clear, the evidence is relevant to show that defendant actually appreciated the risk of evading police officers and is probative of implied malice required for a conviction of second degree murder. A "defendant's *knowledge*—gained in the course of the prior misconduct—of the natural consequences, dangerous to life, of the reckless operation of a motor vehicle, and of his persistence in that behavior" evinces "a conscious disregard for the lives of others on the road." (*Ortiz, supra*, 109 Cal.App.4th at pp. 111-112.) "A jury is entitled to infer that regardless of the mental state or condition that accompanies an instance of reckless driving—whether intoxication, rage, or wilful irresponsibility—the driver's subsequent apprehension and prosecution for that conduct must impart a knowledge and understanding of the personal and social consequences of such behavior." (*Id*. at p. 115.)

Defendant urges this court to decline to follow the rationale of *Ortiz*, arguing that the evidence of his prior felony evading conviction does not contribute anything to the subjective standard (i.e., defendant's actual knowledge) that is not apparent to the

14

reasonable person. We disagree. While common sense suggests that driving the wrong way on the freeway is extremely dangerous, the mens rea for second degree murder is a subjective determination of the defendant's actual knowledge, not a reasonable person standard. (*People v. David* (1991) 230 Cal.App.3d 1109, 1114.) Defendant contested the issue of implied malice. The fact that he previously caused an accident while trying to evade officers before he committed the murder in this case increased "'*his awareness of the dangers of driving badly* . . . and that is what the district attorney has a legitimate right to try to prove . . . [did] this defendant have implied malice in his mind or not when he drove the way he did, and that is a subjective standard. So we have to find out what he was exposed to that most people aren't exposed to in order to understand his level of awareness of the dangers of driving badly.'" (*Ortiz, supra*, 109 Cal.App.4th at p. 116.)

The test for whether evidence is unduly prejudicial is whether it motivates the jurors to reward or punish one side because of their emotional reaction. (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008-1009.) Here, although the evidence is probative in that it shows defendant had previously hit another car head on while attempting to evade a pursuing officer, it is not likely to "inflame the emotions of the jury." (*Ibid.*) This is because, compared to the current accident in which defendant killed an innocent motorcyclist, the evidence to which he objects is relatively mild. Any inflaming of emotions would have come from the evidence of the current crash rather than the 2006 crash. Moreover, the trial court instructed the jury with CALCRIM No. 375 regarding how to consider the 2006 incident (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1171 [[t]his court must presume the jury followed the trial court's limiting instruction]), and

15

the jury was informed that defendant's conduct during the 2006 incident resulted in a conviction. The fact that defendant was convicted lessens the prejudicial impact of his prior driving-related offense, because it validated the evidence and minimized the chance a jury would punish defendant for his prior offense, for which he had already been punished. (See *People v. Kelley* (1997) 52 Cal.App.4th 568, 579.)

To conclude, the trial court did not abuse its discretion when it allowed the jury to hear the details of defendant's 2006 felony evading conduct. The evidence is relevant to and probative of defendant's subjective awareness of the danger to human life when he chose to evade Officer Joyce, it was not cumulative, and it was not unduly prejudicial.

**D. Admission of the Photograph of the Deceased Victim's Body Was Proper.**

Defendant argues the trial court abused its discretion under Evidence Code section 352 and deprived him of a fair trial by admitting a gruesome photograph of the deceased victim.

*1. Additional Background Facts*

At a pretrial hearing, defendant moved to exclude exhibit 11, a photograph of the deceased victim showing his "mostly amputated" leg. The trial court agreed that the photograph was gruesome and that the injury depicted was not the injury that caused death; however, the court noted that "a homicide is frequently gruesome," and this photograph did not appear to be more gruesome than other crime scene photographs. In deciding to admit the photograph, the court stated: "I don't see that the jury will be overly inflamed because of this. They will be saddened. It will be an image that they

will remember for a while. But that is the nature of homicide and this is not unduly gruesome or horrific or duplicative."

At trial, the prosecutor introduced the photograph during the direct examination of Wilson, the individual who stopped at the scene of the collision.

2. *Standard of Review*

As the California Supreme Court has previously observed, "'"'[t]he admission of photographs of a victim lies within the broad discretion of the trial court when a claim is made that they are unduly gruesome or inflammatory. [Citations.] The court's exercise of that discretion will not be disturbed on appeal unless the probative value of the photographs clearly is outweighed by their prejudicial effect. [Citations.]' [Citation.] '[A] court may admit even "gruesome" photographs if the evidence is highly relevant to the issues raised by the facts, or if the photographs would clarify the testimony of a medical examiner.' [Citation.] 'We have consistently upheld the introduction of autopsy photographs disclosing the manner in which a victim was wounded as relevant not only to the question of deliberation and premeditation but also aggravation of the crime and the appropriate penalty . . . . [Citations.]'"' [Citation.] 'Finally, prosecutors, it must be remembered, are not obliged to prove their case with evidence solely from live witnesses . . .' [citation] and do not have to forgo use of photographic evidence 'merely because the defendant agrees with a witness or stipulates to a fact. . . . [T]he jury [is] entitled to see the physical details of the crime scene and the injuries defendant inflicted on his [victim]' [citation]." (*People v. Cage* (2015) 62 Cal.4th 256, 283.)

*3. Analysis*

We have reviewed the photograph and conclude it was relevant to the circumstances of the crime and the prosecution's theory that defendant acted with implied malice. The prosecutor argued that defendant's conduct after the crash showed his callous disregard for the victim. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 471 (*Sattiewhite*) [crime scene photographs are relevant to establish the killer's mental state]; *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1215-1216 [crime scene and autopsy photographs were relevant to prosecution's theory of murder and special circumstance], overruled in part on other grounds as stated in *People v. Rangel* (Mar. 28, 2016, S076785) __ Cal.4th __ [2016 Cal. LEXIS 1816, *37-38].) The photograph at issue helps illustrate this point. During closing argument, the prosecutor referenced other photographs that showed the proximity of the victim's body to the truck driven by defendant. The prosecutor stated: "So you can see that even when the defendant got out of the truck the deceased's body is directly in front of him. He never bothered to check to see if anybody had been hurt. No remorse. No concern." In light of the prosecutor's theory of the case and the other photographs shown to the jury, the photograph at issue helped establish the defendant's mental state at the time of the crash by accurately portraying the injuries the victim suffered as a result of defendant's dangerous driving. (*People v. Hajek and Vo*, *supra*, at pp. 1215-1216 ["The photographs were disturbing, but they were not unnecessarily so. They 'simply showed what had been done to the [victim]; the revulsion they induce is attributable to the acts done, not to the photographs.'"].)

18

We conclude the admission of the photographs fell well within the trial court's broad discretion. Because the trial court did not abuse its discretion in admitting it, there was no violation of defendant's constitutional rights. (*Sattiewhite*, *supra*, 59 Cal.4th at p. 472.)

**E. The Trial Court Committed Sentencing Error.**

Defendant contends, and the People agree, that the trial court erred by imposing a one-year sentence for the prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) that was based on the same conviction (case No. FSB055041) as the five-year sentence for the prior serious felony enhancement (Pen. Code, § 667, subd. (a)(1)) attached to count 3. We also agree.

"[W]hen multiple statutory enhancement provisions are available for the same prior offense, one of which is a [Penal Code] section 667 enhancement, the greatest enhancement, but only that one, will apply." (*People v. Jones* (1993) 5 Cal.4th 1142, 1150.) The same conviction underlies defendant's Penal Code section 667.5, subdivision (b) one-year prior prison enhancement and defendant's Penal Code section 667, subdivision (a)(1) five-year prior serious felony enhancement. Accordingly, the one-year prior prison enhancement for case No. FSB055041 attached to count 3 must be stricken.

### III. DISPOSITION

The judgment is modified to strike the one-year term for the prior prison enhancement (Pen. Code, § 667.5, subd. (b)) for case No. FSB055041 attached to count 3. The trial court is ordered to correct the abstract of judgment and to transmit a

19

corrected copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                                           HOLLENHORST

                                                                      J.

We concur:


RAMIREZ
                                   P. J.

MCKINSTER
                                   J.