Filed 3/3/14  P. v. Martinez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO XAVIER MARTINEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B247850<br>(Super. Ct. No. 2011030533)<br>(Ventura County) |

Francisco Xavier Martinez has a long history of dangerous driving and driving under the influence of alcohol (DUI).  He did so again on August 24, 2011, with a catastrophic result.  Appellant "rear-ended" a family in a Nissan Altima stopped at a red light.  Driving 42 miles per hour, appellant smashed his truck into the back of the Nissan, lifted it up, and pushed it through the intersection.  The collision injured the driver, Agha Mirza, his wife Khadija Mirza, and their one-year-old son Zayd Mirza.  Khadija was 20 weeks pregnant.  The blunt force trauma shattered Khadija's pelvis and killed her fetus.  Appellant fled the scene and was found hiding in the bushes behind a Rite-Aide.  He had a blood alcohol content of .247 percent.

The jury convicted appellant of second degree murder (count 1; Pen. Code § 187, subd. (a)), driving under the influence causing injury (count 2; Veh. Code, §

23153, subd. (a))[1], driving with a .08 percent blood alcohol level causing injury (count 3; § 23153, subd. (b)), and leaving the scene of an accident (count 4; § 20001, subd. (a)). The jury found that appellant had two prior DUI convictions, and on counts 2 and 3, found that he inflicted great bodily injury on Khadija, caused bodily injury to more than one victim, and was driving with a blood alcohol of .15 percent or more (§§ 12022.7; 23558; 23578). The trial court sentenced appellant to an intedeterminate term of 15 years to life plus eight years eight months state prison.

Appellant appeals, contending that the evidence does not support a finding of malice for second degree murder. We affirm the convictions but reduce the sentence to 23 years to life state prison. The judgment will be modified to reflect the following sentence calculation: 15 years to life on count one for second degree murder. A consecutive full determinate term of eight years based on a count 2 principal term of three years, plus a three year enhancement (§12022.7), plus a one year enhancement (§ 23558), plus one year on count 4 (§ 200001, subd. (a); one-third the three year midterm). The three year sentence on count 3 (driving with a .08 percent blood alcohol level causing injury; § 23153, subd. (b)), is stayed pursuant to Penal Code section 654.

*Facts*

It is uncontroverted that appellant struck the victim's Nissan traveling 42 miles per hour. He left no skid marks. Appellant had a blood alcohol content of .247 percent, which required that he consume 16 beers before he got into the truck. A surveillance camera at a nearby service station filmed appellant striking the Nissan and fleeing. The impact was strong enough to burst the tire on the truck and deploy the airbag. Appellant sped off to a Rite-Aid as the tire melted on the wheel rim. Appellant threw the truck keys into the bushes before he was arrested.

The evidence further shows that appellant suffered four prior DUI convictions, all involving dangerous driving.

August 28, 1998 DUI

---

[1] All further statutory references are to the Vehicle Code unless otherwise stated.

On the evening of August 28, 1998, off-duty deputy sheriff Paul Holt tried to pass appellant on the 23 Freeway near Moorpark. Appellant was driving 45 to 50 miles per hour, weaving his Mustang between the freeway lanes and right shoulder. As Holt tried to pass, appellant veered the Mustang back into the number one lane and braked.

Holt followed the Mustang and tried to pass at a bridge. Appellant slowed down to 25 miles per hour and blocked both lanes. When Holt signaled to exit the freeway at Princeton Avenue, appellant exited the freeway at five miles per hour. Holt tried to pass but appellant swerved the Mustang at Holt and honked his horn, forcing Holt to strike the curb.

Ventura County Deputy Sheriff Charles McDonald responded to the 911 call, found the Mustang parked outside appellant's residence, and tried to talk to appellant. Appellant was drunk and said "fuck you."

After Holt identified appellant as the driver, Deputy McDonald arrested appellant. Appellant struggled with the deputy, had no driver's license, and had a blood alcohol concentration of .17 percent. In a *Miranda* interview, appellant said he consumed 10 beers over a five hour interval. Appellant pled guilty to assault with a deadly weapon and driving under the influence of alcohol and drugs.

January 29, 2000 DUI

On the evening of January 19, 2000, Deputy Michael Izquierdo saw appellant speed away from an intersection, squealing his tires and fishtailing the car. Deputy Izquidero tried to make a traffic stop with the patrol car's emergency lights and siren activated. Appellant got out of the Honda and hid behind another car. Appellant smelled of alcohol, denied drinking anything, and gave a false name and date of birth. A preliminary alcohol screening test indicated that appellant's blood alcohol content was .104 and .103. Appellant was convicted of driving with a blood alcohol content of .08 percent or higher.

February 26, 2006 DUI

On the evening of February 26, 2006, appellant cut off Sergeant Donald Shivley in Moorpark near a freeway exit. Shivley honked his horn, flashed his lights, and after making contact with him, took the keys out of appellant's car ignition. . Appellant was incoherent, stopped next to Shivley, and had an open bottle of beer between his legs.

When Deputy Sheriff William Hammer arrived, appellant gave a false name and a false date of birth. An open beer container was on the driver's side of the floorboard. An alcohol screening test indicated that appellant's blood alcohol content was .20 and .21 percent. Appellant pled guilty to driving with a .08 percent or higher blood alcohol content and admitted that his blood alcohol content was .15 percent or higher. When the change of plea was entered, appellant initialed and signed a guilty plea form that stated:

"I understand that being under the influence of alcohol or drugs, or both, impairs my ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of my driving, someone is killed, I can be charged with murder."

February 9, 2007 DUI

On the evening of February 9, 2007, appellant slammed on his brakes approaching a red light in Moorpark. California Highway Patrol Officer Terry Ulrich saw appellant skid through the crosswalk into the intersection. Officer Ulrich signaled for appellant to stop but appellant sped off, spinning his car tires and barely missing a second vehicle.

Officer Ulrich gave chase and saw appellant pull into an AM-PM parking lot. Appellant refused to show his hands, smelled of alcohol, and had an open beer bottle on the center console. Appellant did not have a driver's license, gave a false name and date of birth, and was driving with a .20 and .19 percent blood alcohol level. Appellant pled no contest to driving under the influence of alcohol or drugs and admitted that his blood alcohol content was .15 percent or higher. The change of plea form, signed and initialed by appellant, stated: "If I continue to drive while under the influence of alcohol

4

or drugs, or both, and as a result of my driving, someone is killed, I can be charged with murder."

*Implied Malice*

Appellant argues that the evidence does not support the finding that he acted with malice, a requisite element of second degree murder. "Unless it is clearly shown that under 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict' the conviction will not be reversed. [Citation.]" (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162.)

Implied malice, like all other elements of a crime, may be proven by circumstantial evidence. (*People v. Watson* (1981) 30 Cal.3d 290, 300.) :California Courts have long recognized that a traffic fatality caused by a grossly intoxicated motorist may support a conviction for second degree murder. (*People v. Johnigan* (2011) 196 Cal.App.4th 1084, 1091.) In *Johnigan* we held that a defendant's prior DUI conviction or near miss with other vehicles can establish the defendant's awareness of the life-threatening risks of drunk driving. (*Id.*, at p. 1090.) "[T]here is no requirement of a 'predicate act,' i.e., a prior DUI or an alcohol-related accident necessary to establish implied malice." (*Id.*, at p. 1091.)

Implied malice can be established by evidence that appellant had: (1) a blood alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated, and (4) that appellant engaged in highly dangerous driving. (*People v. Talamantes* (1992) 11 Cal.App.4th 968, 973.) These are not required elements, but factors to provide guidance on appellate review. (*People v. Johnigan*, *supra,* 196 Cal.App.4th at p. 1091; *People v. Olivas, supra,* 172 Cal.App.3d at p. 989.) The state of mind of a person who acts with conscious disregard for life (i.e., implied malice) "is 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.'" (*People v. Olivas* (1985) 172 Cal.App.3d 984, 988.)

For purposes of substantial evidence review, the evidence is more than compelling. Appellant had a .25 percent blood alcohol content, more than three times the legal limit, and four prior DUI convictions, all involving dangerous driving. Appellant

5

had consumed more than 16 beers before driving his truck into the back of the victims' Nissan. Drinking 16 beers is not a trivial or casual undertaking. It takes a bit of time and thought.

With respect to prior knowledge that driving while intoxicated is dangerous, appellant had four prior DUIs involving dangerous and/or aggressive driving. In two DUI convictions, appellant signed and initialed a change of plea form acknowledging that driving under the influence of alcohol is extremely dangerous to human life.

Appellant argues that the written acknowledgement in the prior DUI convictions do not "constitute irrefutable evidence" of knowledge. That is not the standard of proof. The jury was instructed: "The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." (CALCRIM 220.) If "irrefutable evidence" was the standard to convict, prosecutors would have to prove no possible doubt. That is not the law because "everything relating to human affairs is open to some possible or imaginary doubt." (CALJIC 2.90; see *People v. Gottman* (1976) 64 Cal.App.3d 775, 784 ["beyond any shadow of a doubt" is a higher standard than the "proof beyond a reasonable doubt"].)

Appellant speculates that he may have initialed the acknowledgment in the prior DUI cases without reading it. He argues: "No witness attested to the circumstances or conditions under which appellant initialed the plea form . . . ." Appellant claims that he cannot not read English and required a Spanish interpreter to explain the acknowledgment form when the change of plea was entered in the prior DUIs cases. None of this was raised in the trial. The DUI prior conviction records were received into evidence without objection and indicate that appellant had a Spanish interpreter when he entered the change of pleas. When the trial court accepted the DUI plea in 2006, it found that appellant expressly, knowingly, understandingly and intelligently waived his rights and understood. Appellant signed a similar acknowledgment in 2007 when he was convicted on the fourth DUI.

6

The  act of ramming a Nissan at a stop light, driving over the back of the vehicle, and pushing it across the intersection leaves little to the imagination.  After appellant smashed into the Nissan, he fled the scene, accelerated into oncoming lanes of traffic with a burst tire, abandoned the truck outside a Rite-Aide and hid in the bushes. The  conduct was consistent with the prior DUIs in which appellant engaged in dangerous driving and tried to flee.

The jury was instructed that intent or mental state can be proved by circumstantial evidence (CALCRIM 225)  that malice does not require hatred or ill will toward the victim, (CALCRIM 520)  and that voluntary intoxication is not a defense to the charge of second degree murder.  Based on the evidence, it took the jury no leap in logic to conclude that appellant deliberately performed a wanton act and knew that driving while intoxicated was dangerous and could kill someone.  "The criminal act underlying vehicular murder is not use of intoxicating substances in anticipation of driving, but is driving under the influence with conscious disregard for life."  (*People v. Olivas, supra,* 172 Cal.App.3d at pp. 988-989.)

*Sentencing Error*

Appellant contends, and the attorney general agrees, that the trial court erred in selecting count 4 (leaving scene of accident; § 20001, subd. (a)) as the principal term rather than count 2 (driving under influence causing injury; § 23153, subd. (a)) to calculate the determinate sentence.  This is so because count 2 has two conduct specific enhancements that provide for a greater aggregate principle term.

The trial court stated that it had "a duty, an obligation and responsibility to protect society for as long as I can from this individual."  Appellant was sentenced to 15 years to life on count 1 for second degree murder.  Selecting count 4 as the principal term, the court imposed the upper term of four years, plus eight months on count 2 (one-third the middle term), plus the three year and one year enhancements (§ 12022.7; 23558).

Penal Code section 11701, subdivision (a) requires that the trial court select, as the principal term, the crime carrying the greatest punishment including its

7

corresponding enhancements.  (See *People v. Harvey*  (1979) 25 Cal.3d 754, 759-760.)
That would be count 2 rather than count 4 because count 4 has no conduct enhancements.

*Conclusion*

We modify the sentence to impose a three year upper term on count 2 (§ 23153, subd. (a))  plus a three year enhancement (§ 12022.7) and a one year enhancement (§ 23558), plus one year on count 4 (§ 20001, subd. (a); one-third the midterm). That adds up to eight years. to run consecutive to the count 1 indeterminate term of 15 years to life, for an aggregate sentence of 23 years to life.  The three year sentence on count 3 (driving with a .08 percent blood alcohol level causing injury; § 23153, subd. (b)) is stayed pursuant to Penal Code section 654.  The superior court clerk is directed to modify the abstract of judgment and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment as modified is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J..

8

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Sharon M. Jones , under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.