Filed 6/24/14  P. v. Ramirez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUDITH RAMIREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B245664<br>(Super. Ct. No. 2010019373<br>No. 2002003390)<br>(Ventura County) |

Judith Ramirez appeals from the judgment entered after a jury convicted her of second degree murder of her daughter on May 29, 2010 (count 1; Pen. Code, §§ 187, subd. (a); 189)[1], two counts of child endangerment (counts 2 & 3; § 273a, subd. (a)), driving with a suspended license on May 29, 2010 (count 4; Veh. Code, § 14601.2, subd. (a)), driving under the influence of alcohol on January 27, 2007 (count 5; Veh. Code, § 23152, subd. (a)), driving while having a 0.08 percent or higher blood alcohol on January 27, 2007, (count 7; Veh. Code, § 23152, subd. (b)), and driving with a suspended/revoked license on January 27, 2007 (count 7; Veh. Code, § 14601.5, subd. (a)).  On count 1 for second degree murder, the jury found that appellant personally inflicted great bodily injury on her four-year-old son (§ 12022.7, subd. (d)) and personally inflicted great bodily injury on Abilene Diaz (§ 12022.7, subd. (a)).  On counts 2 and 3 for child

---

[1] All statutory references are to the Penal Code unless otherwise stated.

endangerment, the jury found that appellant personally inflicted great bodily injury on her son and daughter (§ 12022.7, subd. (a)).  The trial court sentenced appellant to 15 years to life state prison on the murder count plus eight years on the great bodily injury enhancements (§ 12022.7, subds. (a) & (d)) for an aggregate sentence of 23 years to life.  On counts 2-7 appellant was sentenced to jail and concurrent prison terms, some of which were stayed.  (§ 654.)  Appellant contends that the conviction for implied malice, second degree murder is not supported by the evidence.  We affirm.

*Counts 1-4: May 29, 2009 DUI*

On May 29, 2010, appellant's 17-year old daughter, Victoria Ramirez, was killed while appellant was driving under the influence of alcohol (DUI).  Earlier in the day, appellant drove Victoria, her four-year-old son (Jose H.), and Victoria's friend (Abilene Diaz) to a party in Nyland Acres.  Appellant consumed beer before going to the party,  drank a beer on the way to the party,  and drank a lot of beer at the party.  Jaquelin Garcia saw appellant seated at a table with two or three open cans of beer.

When appellant left the party at 9:00 p.m., Garcia asked if appellant was okay to drive or needed a ride.  Appellant said that her daughter (Victoria) or daughter's friend (Diaz) was driving.  Liana Marron, the party host,  asked "Are you okay?"  "Do you want me to take you?"  Appellant said that Diaz was driving.  As they walked to appellant's Nissan Pathfinder, Victoria asked appellant to let Diaz drive.  Appellant insisted on driving  and was drunk, which concerned Diaz and Victoria.  On a prior occasion, appellant said that if she was stopped for drunk driving they would throw her in jail.

At 9:08 p.m., appellant stopped at a Valero gas station on Vineyard Avenue and purchased a large can of beer.  Appellant drank the beer from a brown paper bag as she drove northbound on Vineyard Avenue to Santa Paula.  Diaz noticed that appellant was zigzagging and saw a truck coming at them head-on.

A motorist, Maria Sanchez,  saw the Nissan swerve three or four times and go over the center line into oncoming traffic.  Sanchez turned on her emergency lights to warn motorists and pulled over.  As appellant approached a curve in the road, appellant

2

lost control of the Nissan, hit a ditch culvert, and rolled over two times. Diaz, who was in the front passenger seat, suffered facial lacerations. Appellant's daughter, Victoria, was in the rear passenger seat and died from blunt-force head injuries.

Appellant's four-year-old son, Jose, was trapped in the rear passenger seat and suffered a broken arm. Jose yelled, "Help me. Help me" and "Sorry, Mom. Sorry, Mom." Appellant was worried, and in an angry voice, told Jose to "Shut your trap" and "Don't say anything more." After a paramedic arrived, appellant screamed, "Is my daughter fucking dead? Don't fucking lie to me. Tell me, is she fucking dead?"

California Highway Patrol Officer Richard Holguin responded to the 911 call and found a can of beer in a brown bag 10 to 15 feet from the Nissan. The can was "freshly opened" and had beer in it. Officer Holguin contacted appellant at the hospital and noted that she had a strong odor of alcohol and red and glassy eyes. Appellant had minor cuts to her face and left arm, and contusions across the shoulder and chest. Officer Holguin believed the injuries were consistent with appellant being the driver and asked how the accident happened. Appellant said "My brakes didn't work. I couldn't stop." When Officer Holguin asked where appellant started driving from, appellant replied "I never said I was driving." Officer Holguin responded, "You just told me that your brakes weren't working. That kind of implies to me that you were driving."

Appellant repeatedly asked about her daughter but not about her son who was crying loudly in the hospital trauma room. Appellant said that she drove through the curves on Vineyard, that the brakes did not work, and that she tried to drive into a field and crashed. When appellant was told that her daughter was dead, appellant yelled out, "No. It's my fault. I should have been the one who had died."

Appellant admitted drinking earlier in the day but could not recall how much. Officer Holguin noted that appellant's speech was thick and slurred and administered simple field sobriety tests. Appellant failed the tests and was asked to take an alcohol breath test. Appellant said, "Go ahead. I was drunk anyways." Appellant blew into a preliminary alcohol screening device which registered a .124 percent blood-

alcohol concentration (BAC).  When Officer Holguin asked appellant for a second breath sample, appellant pursed her lips and pretended to blow.

Appellant was arrested, waived her *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]), and admitted that she consumed beer before and during the party.  Appellant took a blood test which registered a .16 percent BAC.  Based on a hypothetical that appellant was drinking before the traffic fatality and had not fully absorbed the alcohol, a forensic expert opined that appellant's BAC was .133 percent to .156 percent.

At trial, Diaz testified that appellant purchased a beer at a liquor store before the party and drank it as she drove them to the party.  Diaz noticed that the Nissan was swerving and that appellant had difficulty controlling the vehicle.

The day before the occurrence the number one, northbound lane on Vineyard Road was resurfaced.  Marc Mumford,  the project supervisor, testified that the construction zone was posted 25 miles per hour and that Caltrans wanted the signs to stay up over the weekend.  Before the occurrence , Mumford's crew placed yellow and white reflective tabs on the road to mark the center line and northbound traffic lanes.  Three foot tall, orange reflective cylinders were placed along the edge of the roadway every 30 feet.

Appellant defended on the theory that the Nissan brakes did not work, that the steering locked up, and that the road was too dangerous to drive on.  These claims were refuted by expert testimony that the Nissan had no mechanical problems, that Vineyard Avenue was safely marked for nighttime driving, and that the road resurfacing did not cause the accident.  Wesley Vandiver, an accident reconstruction expert,  opined that the Nissan was traveling 60 miles per hour when appellant drove it off the road.

*Counts 5-7: January 27, 2007 DUI*

Counts 5 through 7 are based on a 2007 DUI.  Shortly after midnight on January 27, 2007**,** appellant ran a stop sign with no headlights on and turned left in front of a patrol car driven by Oxnard Police Officer Joseph Clarke.  Officer Clarke braked to avoid hitting appellant and followed for two or three blocks as appellant made quick

4

jerky movements. Appellant was driving with a suspended license and said that she had two or three drinks at a nearby bar. Appellant's speech was slurred and her eyes were red and tired. Officer Clarke asked if appellant was feeling the effects of alcohol. Appellant said "I feel good" and that she was on her way to pick up her son. Appellant admitted that she was "too drunk" to perform a field sobriety test and took a blood test which registered a .18 percent BAC. After appellant was arrested for DUI, her driver's license was suspended.

*2004 DUI Conviction*

In 2004 appellant was convicted of DUI and ordered to attend an alcohol school program. Before appellant was expelled from the program, appellant attended a class on the risks and dangers of driving while intoxicated, a class on the statistics of alcohol related car accidents resulting in injury or death, and a class about DUI victims and their families. It was stipulated that appellant's driver's license was suspended as a result of the 2004 DUI conviction and that appellant drove with a suspended license from December 4, 2004 through May 29, 2010 when the traffic fatality occurred.

*Implied Malice*

Appellant claims that the evidence does not support the finding that she acted with malice, a requisite element of second degree murder.[2] As in any sufficiency of the evidence appeal, we review the record in the light most favorable to the prosecution and draw all reasonable inferences in support of the judgment. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that under no hypothesis whatever is there

---

[2] The jury was instructed that intent or mental state can be proved by circumstantial evidence (CALCRIM 225), that malice does not require hatred or ill will toward the victim, (CALCRIM 520), and that if appellant "was under the influence of an alcoholic beverage, then it is not a defense that something else also impaired her ability to drive." (CALCRIM 2110.)

substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Implied malice may be proven by circumstantial evidence and has both a physical and a mental component. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) The physical component is satisfied by the performance of an act, the natural consequences of which are dangerous to life. (*Ibid*.) The mental component is established where the defendant knows that his or her conduct endangers the life of another and acts with conscious disregard for life. (*Ibid*.) Malice may be found even where the act causes an accidental death. (*People v. Contreras* (1994) 26 Cal.App.4th 944, 954-955.) When "the facts demonstrate subjective awareness of the risk created, malice may be implied. [Citation.]" (*People v. Watson* (1981) 30 Cal.3d 290, 298.)

In *People v. Johnigan* (2011) 196 Cal.App.4th 1084 we held there is no requirement of a "predicate act," i.e., a prior DUI or an alcohol-related accident necessary to establish implied malice. (*Id.*, at p. 1091.) Implied malice can be established based on evidence that the defendant had (1) a blood alcohol level above the .08 percent legal limit; (2) a pre-drinking intent to drive; (3) knowledge of the hazards of driving while intoxicated, and (4) engaged in highly dangerous driving. (*People v. Talamantes* (1992) 11 Cal.App.4th 968, 973.) These are not are required elements, but factors to provide guidance on appellate review. (*People v. Johnigan*, *supra,* 196 Cal.App.4th at p. 1091.) Here all four factors are present.

Appellant had a .13 to .15 BAC, almost twice the legal limit, when she drove off the road and killed her daughter. Appellant knew she was too intoxicated to drive and knew it would be highly dangerous. The state of mind of a person who acts with conscious disregard for life "is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.'" (*People v. Olivas* (1985) 172 Cal.App.3d 984, 988.)

Diaz testified that appellant consumed beer before the party and drank a lot before leaving the party. Two people asked if appellant was okay to drive and needed a ride. Appellant lied and said that Diaz was driving. Concerned about appellant's

6

drinking, Victoria asked if Diaz could drive. Appellant insisted on driving, stopped at a Valero gas station, and bought a large can of beer. Knowing it was wrong to drink and drive, appellant drank from a paper bag as she zigzagged down Vineyard Road well in excess of the posted speed limit.

Drinking an open can of beer while speeding through a road construction project at night is not a trivial or casual undertaking. It was strong circumstantial evidence of appellant's conscious indifference and "I don't care attitude." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1208.) Appellant's wanton conduct was similar to the 2007 DUI in which she almost hit a police car and tried to drive away. Appellant told the officer that she had two or three drinks and was on her way to pick up her son.

A reasonable jury could find that appellant knew about the hazards of drinking and driving based on the prior DUI conviction and the alcohol school classes. Appellant had her driver's license suspended in 2004 and failed to complete the DUI alcohol school program. It was a daily reminder that appellant should not drive while intoxicated yet appellant continued to drive and had a second DUI in 2007. Courts have consistently looked to the driving records of the defendant and educational programs attended in determining implied malice. (*People v. Ricardi* (1990) 221 Cal.App.3d 249, 254; *People v. McCarnes* (1986) 179 Cal.App.3d 525, 534.) "One who drives a vehicle while under the influence after having been convicted of that offense knows better than most that h[er] conduct is not only illegal, but entails a substantial risk of harm to [herself] and others." (*People v. Brogna* (1988) 202 Cal.App.3d 700, 709.)

The evidence further shows that appellant had a preconceived plan to drink and drive and knew that it would endanger the lives of others. Appellant drank before going to the party, drank on the drive over to Nyeland Acres, and consumed more alcohol at the party. The party host and a friend asked whether appellant was okay to drive or needed a ride home. Appellant lied about who was driving and vetoed her daughter's request to let Diaz drive. Minutes later, appellant bought another beer and drank it as she zigzagged through the road project and almost hit a truck head on.

7

After appellant hit the ditch culvert and rolled the Nissan, appellant exhibited a callous disregard for the safety of her passengers. Suspecting that her daughter was dead or seriously injured, appellant yelled at her four-year-old son to "Shut your trap" and not say anything. When appellant became the focus of the police investigation, appellant denied that she was driving and blamed the accident on the car brakes and steering.

Appellant argues that the prior DUIs did not "burn awareness into her mind" but actions speak louder in words. Appellant continued to drink and drive after her license was suspended in 2004 and 2007. Appellant claims that the 2004 and 2007 DUIs are remote in time but it was strong circumstantial evidence that appellant intended to drink and drive no matter how much it endangered the lives of others. "[C[ourts have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway - whether provoked by the use of alcohol, [or] of another intoxicant, . . . sensitizes him [or her] to the dangerousness of such life-threatening conduct. This is so because apprehensions for drunk driving, and the citations, arrests, stiff fines, compulsory attendance at education programs, and other consequences do not take place in a vacuum." (*People v. Ortiz* (2003) 109 Cal.App.3d 104, 112-113.)

Appellant claims that her driving was less dangerous than reported implied malice murder cases in which the defendant was chased by the police (*People v. Lima* (2004) 118 Cal.App.4th 259; *People v. Olivas* (1985) 172 Cal.App.3d 984), ran a red light and struck a car (*People v. Fuller* (1978) 86 Cal.App.3d 618), had near misses (*People v. Autry* (1995) 37 Cal.App.4th 351), drove at high speed in the wrong traffic lane (*People v. McCarnes* (1986) 179 Cal.App.3d 525), or drove at high speeds on city streets and had a near miss with another motorist (*People v. Watson, supra,* 30 Cal.3d 290). But "nowhere does the opinion in *Watson* state that all of the factors present in that case are necessary to a finding of second degree murder. . . . [¶] . . . *Watson* . . . deliberately decline[d] to prescribe a formula for analysis of vehicular homicide cases, instead requiring a case-by-case approach." (*People v. Olivas, supra,* 172 Cal.App.3d at

8

pp. 988-989.)  If the Supreme Court had intended the factors in *Watson* to be required in all cases for a second degree murder conviction, it presumably would have said so.  (*Id.*, at p. 989.)  "[A]ppellant 'cites no case where a drunk-driving-murder conviction has been reversed for insufficient evidence.' [Citation.]"  (*People v. Autry* (1995) 37 Cal.App.4th 351, 358.)

In *People v. Johnigan, supra,* 196 Cal.App.4th 1084 we noted that a high level of intoxication sets the stage for tragedy long before the driver turns the ignition key.  (*Id.*, at p. 1091.)  This is such a case.  Appellant knew she was too intoxicated to drive, lied about who was driving, and drank a beer from a paper bag as she sped through a road resurfacing project.  Narrowly avoiding a head-on collision with a truck,  appellant rolled the Nissan and fatally injured her daughter.  Before the police arrived, appellant told her four-year-old son who was trapped in the back seat to "Shut up" and "Don't say anything."  It took no leap of logic for the jury to conclude that appellant acted with conscious disregard of life and with wanton disregard of the near certainty that someone would be killed.  (*People v. Johnigan, supra,* 196 Cal.App.4th at p. 1092.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

9

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Linda C. Rush, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. , Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.