Filed 5/23/23 P. v. Scarpa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEPHEN TAYLOR SCARPA,<br><br>    Defendant and Appellant. | G061028<br><br>(Super. Ct. No. 18HF1525)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Patrick H. Donahue. Affirmed as modified.

Arthur Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

While driving home from an all-night party, appellant Stephen Taylor Scarpa fell asleep at the wheel and crashed his van into a bicyclist who was fatally injured as a result of the collision. Appellant told the police that although he had been "partying for a couple days," he thought he could make it home safely. Appellant contends that erroneous belief compels reversal of his conviction for implied malice murder because, in his view, it proves he did not act with conscious disregard for the victim's life. He also claims the trial court erred by failing to give his requested jury instruction on implied malice, and the district attorney violated his due process rights by failing to charge him with manslaughter as an alternative offense to murder. We find appellant's arguments unavailing, and other than to correct an undisputed clerical error, affirm the judgment against him.

## FACTS

Around 8:00 a.m. on November 3, 2018, Michael Kreza was riding his bicycle on the sidewalk along Alicia Parkway in Mission Viejo. He was on his way to his daughter's soccer game when appellant's van veered off the roadway and plowed into him from behind. The force of the collision crushed Kreza's body and catapulted him into the street. A bystander called 911, and an ambulance was summoned, but Kreza sustained multiple injuries and died two days later.

When the police contacted appellant at the scene, he was sitting on the curb next to his van near the collision site. Fidgety and anxious, he was under the impression he had run into a group of people, not just one person. He said he was returning home from a party in Westminster and should not have been driving because he was upset. While he implied his angry mindset was the reason he crashed, drug use quickly surfaced as the likely impetus.

In response to questioning, appellant said he had taken methamphetamine and Suboxone, a narcotic analgesic akin to morphine, at the party. Although his general

2

mental awareness seemed intact, he showed physical signs of impairment and was unable to perform several of the balance and coordination tests that were administered to him, so the police decided to take him in for further questioning.

Before doing so, officers found six Gabapentin pills in appellant's pocket, and inside his van they found three prescription pill bottles bearing appellant's name. The prescriptions were for Lorazepam, Ropinirole and Adderall, all of which can cause drowsiness and/or impaired driving.

At the police station, appellant told investigators he had been using methamphetamine for two days straight without any sleep. Describing his method of usage, he said he both smoked methamphetamine and injected it with fentanyl during that time. He also said that he had taken other drugs while he was at the party and that he could still feel the effect of all of the substances he had consumed. Although most of the answers he provided to the officers' questions were coherent, his attention span was spotty and he dozed off intermittently throughout the interview.

During his lucid moments, appellant claimed he left the party in a huff because he was upset with his girlfriend. He said he took the 405 Freeway down from Westminster and was just a few blocks from his home when the crash occurred. He admitted he was impaired from his drug use and that driving under the influence is wrong. However, he said that when he's doing drugs, he "want[s] what [he] want[s] when [he] want[s] it," and that night, he drove because the people at the party were "piss[ing him] off" and he wanted to leave. Even though he was too "loaded" to go to work that day, he thought he could make it home safely. However, he ended up falling asleep at the wheel, which led to the fatal crash.

Appellant said he "messed up" by driving under the influence and expressed remorse for his behavior. However, he admitted it wasn't the first time he had driven while impaired. Recalling a time when his young daughter was in the car with

3

him, he said his memory of that incident made him feel "disgusted" because he had put his daughter in danger. He also recognized his impaired condition was the cause of the crash in this case, and there was no justification for him to be driving under the influence. He was not surprised when the police formally placed him under arrest. Weary and dejected, he simply observed, "It's about time."

The arresting officer opined appellant was under the influence of a central nervous system stimulant and a central nervous system depressant. And, as it turned out, a blood draw revealed appellant had a variety of drugs in his system, including methamphetamine, amphetamine, Gabapentin and Lorazepam, all of which can impair a person's driving ability. During his interview, appellant said he had a prescription for some of those medications, but he conceded it was largely "B.S." because his doctor handed out drugs like candy, and he took them just to get high.

Appellant also admitted getting into a previous accident while using Gabapentin and another drug that made him sleepy. The police report pertaining to that incident stated appellant had blacked out while driving and crashed into a parked car. Although appellant was not charged with driving under the influence in connection with the incident, his driver's license was temporarily suspended, so he knew driving while impaired was a serious matter. Indeed, the prosecution presented evidence appellant had attended various classes focusing on the dangers of driving under the influence, and he had once worked at a residential treatment setting where that topic was often discussed.

At trial, appellant faced the charge of implied malice second degree murder. No other crimes were alleged, and the jury was not instructed on any lesser included or related offenses. The defense did not dispute that, by driving under the influence of drugs, appellant intentionally committed an act that was dangerous to human life. However, the defense argued appellant did not consciously disregard that danger so

4

as to be guilty of implied malice murder. Rather, he just miscalculated his ability to drive, which only rises to the level of negligence.

The jury disagreed and found appellant guilty as charged. The trial court sentenced him to an indeterminate term of 15 years to life in prison for his crime.

DISCUSSION

*Sufficiency of the Evidence*

Relying on his erroneous belief he could drive home safely from the party, appellant contends there is insufficient evidence to satisfy the conscious-disregard requirement of implied malice murder. The record is otherwise.

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence of the defendant's guilt. (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless "'"upon no hypothesis whatever is there sufficient substantial evidence to support the judgment."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Appellant was convicted of second degree murder on a theory of implied malice that was deemed applicable to impaired drivers in *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*). In that case, our Supreme Court ruled, "'One who willfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.'" (*Id.* at pp. 300–301, quoting *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 897.) Therefore, when a drunk driver

5

causes a crash that results in the death of another, he may be charged with implied malice murder, which is a form of second degree murder. (*Id.* at pp. 294, 299.)

The *Watson* court did not take this to mean implied malice murder charges should be routinely filed in vehicular homicide cases. (*Watson, supra,* 30 Cal.3d at p. 301.) However, it ruled a person may be properly charged with and convicted of that offense if he acted with wanton disregard for human life. (*Id.* at p. 300.) This requires proof the person's impaired driving created a life-threatening danger to others, and he consciously disregarded that danger in causing the victim's death. (*Ibid.*)

This case turns on the conscious-disregard requirement. Contrary to appellant's suggestion, that requirement does not require proof the defendant acted with ill will or a "maniac-level mental state." (See *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 110 ["Even if the act results in a death that is accidental, . . . the circumstances surrounding the act may evince implied malice."].) Rather, it simply "requires a defendant's awareness of engaging in conduct that endangers the life of another – no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143.)

Appellant contends he lacked that state of mind because, as he told the police after the incident, he thought he could make it home from the party without hurting anyone. Even though that belief turned out to be incorrect, appellant claims, "If a person thinks [he is okay to drive] and that person drives a significant distance without incident before momentarily falling asleep and crashing, that person does not have the *conscious disregard for human life* required for a[n implied malice] murder conviction."

Appellant's argument fails for several reasons. For starters, it is premised on the erroneous assumption the jury had to accept his claim at face value and conclude that he really thought he could drive home safely after partying for two days straight. As a trier of fact, the jury was free to disbelieve appellant's claim as self-serving and resolve that issue against him. (*People v. Silva* (2001) 25 Cal.4th 345, 369; *People v. Lashley*

6

(1991) 1 Cal.App.4th 938, 946.) In other words, the jury was free to conclude that although appellant told the police he believed he could drive home safely, he really did not believe that to be the case.

Even if the jury accepted appellant's claim he felt he could drive home safely from the party, it would not advance his cause. Taking appellant's claim at face value, it simply indicates that, despite knowing he was impaired, and despite knowing the life-threatening danger of impaired driving, he thought it wouldn't happen to him. However, thinking something will not happen and not caring if it does are not mutually exclusive concepts. Appellant's belief he could make it home safely without killing anyone does not negate the possibility he consciously disregarded that risk.

To illustrate this point in his closing argument, the prosecutor analogized appellant to an addicted gambler who, having full knowledge of the risk of losing his money, continues to make bets in the hope of winning. The prosecutor argued appellant was guilty of implied malice because despite thinking he could "beat the house" by making it home safely, he knew from his past experiences just how dangerous driving under the influence of drugs can be. So even if he truly thought it was safe for him to drive, he still made a conscious decision to "roll the dice" and knowingly disregarded the risk of death to others by driving while impaired.

This was an accurate characterization of the law. (See *People v. Albright* (1985) 173 Cal.App.3d 883, 887 [taking a "gamble" with death by driving very dangerously is sufficient to satisfy the mental requirement for implied malice murder].) As the prosecutor correctly pointed out, it's not so much what appellant thought or hoped would happen when he drove home from the party impaired, but whether he knowingly ignored the life-threatening risks associated with his behavior. (See *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1263 [upholding the defendant's second degree murder conviction although he allegedly cocked the trigger of his gun as a joke and never

7

intended to kill the victim]; *People v. Murray* (1990) 225 Cal.App.3d 734, 747 [even if the defendant believed he could safely avoid other cars while driving under the influence, the jury could still reasonably infer "he deliberately chose to continue in conscious disregard of the risk to human lives."].)

That brings us to another flaw in appellant's argument. He seems to think his own statements following the crash are determinative of the implied malice issue, but actually all of the circumstances surrounding appellant's conduct are relevant. (See *People v. Nieto Benitez, supra,* 4 Cal.4th at p. 107 ["The very nature of implied malice . . . invites consideration of the circumstances preceding the fatal act."]; *People v. Moore* (2010) 187 Cal.App.4th 937, 942.) While appellant's statements may be probative of whether he acted in conscious disregard of human life, they are only one part of the equation. (*People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358.) Other factors bearing on that issue include the extent of appellant's impairment, his knowledge of the hazards associated with impaired driving, and whether he exhibited a pre-impairment intent to drive. (*People v. Munoz* (2019) 31 Cal.App.5th 143, 152; *People v. Talamantes* (1992) 11 Cal.App.4th 968, 973.)

Appellant's level of impairment was particularly severe because not only was he under the influence of both stimulants and depressants, he hadn't slept in two days. In fact, he was so tired he dozed off several times during his police interview, which clearly signaled his inability to safely operate a motor vehicle. (See *People v. Jimenez, supra,* 242 Cal.App.4th at pp. 1358-1359 [upholding the defendant's conviction for implied malice murder for causing a fatal accident in the course of a drug-induced driving stupor].)

The record shows appellant also had both classroom training and personal experience dealing with the dangers of impaired driving before this case arose. One time, in a cautionary tale for what happened in this case, he blacked out and struck a parked car

8

because the medications he was taking made him feel tired.[1] And on another occasion, he drove impaired while his daughter was with him in the car. During his police interview, appellant readily acknowledged how dangerous that was. In fact, he said it made him feel disgusted because of the life-threatening danger it presented to his daughter and others. Thus, it is reasonable to infer appellant had a deeper awareness and understanding of the risks associated with impaired driving than the average person.

Still, that did not stop appellant from driving impaired on the morning in question. He could have asked for a ride, gone to sleep in his van, or called a ride share service to get home. But, as appellant admitted to the police, he tends to let his wants and desires dictate his behavior when he gets high, and sometimes that results in him assuming the deadly risk of driving while under the influence. This stubborn mindset reflects a conscious disregard for human life, not mere negligence. (See *People v. Olivas* (1985) 172 Cal.App.3d 984, 987-988 [whereas negligence reflects general indifference to the consequences of one's actions, implied malice reflects conscious disregard of the risk of death or great bodily injury].)

Appellant expresses a fear that if we uphold his conviction based solely upon his preexisting knowledge that driving under the influence is dangerous to human life, then every impaired driver who causes a fatality could be prosecuted for murder. But nothing in our opinion supports the idea that preexisting knowledge is a substitute for the conscious-disregard requirement. It is simply one of the factors that informs our analysis of that requirement.

Considering all the circumstances in this case, we conclude there is sufficient evidence to uphold appellant's conviction for implied malice murder. Although the evidence appellant acted in conscious disregard for human life is not so clear and unequivocal as to be free from any possible doubt, drawing all inferences in

---

[1] Presumably he did not think he would cause an accident on that occasion either.

favor of the judgment below – as we are required to do – there is substantial evidence he knowingly ignored the grave risk his impaired driving posed to other people on or near the roadway. We therefore reject his challenge to the sufficiency of the evidence.

*Instruction on Implied Malice*

Appellant also contends the trial court erred in failing to give his proposed jury instruction on implied malice. Again, we disagree.

Per CALCRIM No. 520, the jury was instructed that to satisfy the implied malice requirement for second degree murder, it needed to find appellant 1) intentionally committed an act; 2) the natural and probable consequences of which were dangerous to human life; 3) at the time he committed the act, he knew it was dangerous to human life; and 4) he deliberately acted with conscious disregard for human life.

As to the fourth element, appellant offered a special instruction to pinpoint the mental state required for implied malice. He wanted the trial court to tell the jury, "The state of mind of the person who acts with conscious disregard for life is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.'" However, the trial court refused the instruction for fear it would confuse the jury.

We don't think the instruction was likely to do that. In fact, appellant's proposed instruction, which comes directly from *People v. Olivas, supra,* 172 Cal.App.3d 984, was simply intended to explain the conscious-disregard requirement of implied malice in "everyday language." (*Id.* at p. 988.) But that does not mean the trial court erred by not giving the instruction.

To be sure, jurors in a criminal case "must be instructed on general principles ""'closely and openly connected to the facts and that are necessary for the jury's understanding of the case"'" including those instructions that 'pinpoint' a defense theory. [Citation.] Pinpoint instructions are not warranted, however, when they are . . . duplicative" of other instructions that were given. (*People v. Mora and Rangel* (2018) 5

10

Cal.5th 442, 498-499 [defense pinpoint instruction properly rejected since its import was conveyed by other instructions].)

Appellant's proposed jury instruction on implied malice added nothing of substance to the standard instruction given by the court. To say implied malice requires proof the defendant doesn't care if his dangerous conduct kills someone, which is what the proposed instruction stated, is merely another way of saying the defendant must act in conscious disregard for human life, which is what CALCRIM No. 520 conveyed to the jury. Our Supreme Court has specifically endorsed CALCRIM No. 520 as a "straightforward" description of the conscious-disregard requirement (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1215), and there was no need to embellish it. (See *Gurrola v. Muniz* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 213055 [rejecting the defendant's due process challenge to CALCRIM No. 520].)

In any event, the record shows defense counsel liberally utilized the language of his proposed instruction during closing argument. He repeatedly told the jury the conscious-disregard requirement not only required proof that appellant knew his impaired driving was dangerous to human life, it also required proof that appellant blew off that danger because he did not care if he killed someone. And that is essentially how the prosecutor framed the conscious-disregard requirement during his argument. Thus, it is safe to assume the jury understood the gist of appellant's proposed instruction. He was not denied the opportunity to put his own spin on the conscious-disregard requirement. (See generally *People v. Mendoza* (2007) 42 Cal.4th 686, 702 [while counsel may not misstate the law in closing argument, they have broad discretion to discuss the legal facets of the case].) Given everything the jury was told about the conscious-disregard requirement of implied malice, the failure to give appellant's proposed instruction on that subject is not cause for reversal.

*Failure to Charge Appellant with Manslaughter*

Appellant also argues the district attorney violated his due process rights by not charging him in the alternative with manslaughter, so as to provide the jury with a middle-ground choice between convicting him of murder and acquitting him altogether. We find his argument unpersuasive.

Manslaughter is defined as "the unlawful killing of a human being without malice." (Pen. Code, § 192.) As appellant notes, a person is guilty of that offense if he unlawfully kills a human being while driving with gross negligence in violation of the impaired driving laws. (Pen. Code, § 191.5, subd. (a).) However, the trial court was not required to instruct on that offense because it is a lesser related, not a lesser included, offense of murder. (*People v. Sanchez* (2001) 24 Cal.4th 983, 989; *People v. Wolfe* (2018) 20 Cal.App.5th 673, 685-686.) And there was no basis for instructions on involuntary manslaughter based on criminal negligence because that offense does "not apply to acts committed in the driving of a vehicle." (Pen. Code, § 192, subd. (b).)

These instructional limitations explain why appellant's argument is aimed at the district attorney, not the trial court. In assailing the lack of a middle-ground option for the jury, appellant contends, "To only charge murder when there is a clear factual question whether [he] acted with conscious disregard for life or gross negligence ignores the law the Legislature wrote for [the] crime [of gross vehicular manslaughter while intoxicated] and coerces the jury into an improper all-or-nothing, murder-or-walk choice for no good reason. The only reason the prosecutor could have for not letting the jur[ors] decide the crucial issue [of intent] in this case is fear they would find [appellant] guilty of manslaughter and not guilty of murder. That is the only possible reason for the way the [d]istrict [a]ttorney charged this case. Thus, the [d]istrict [a]ttorney used his charging power to engineer a trial that undermined the quest for justice, creating a fundamentally unfair trial in violation of the . . . due process required by the Fourteenth Amendment."

12

That's an erroneous accusation.  It overlooks the fact "prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from "'the complex considerations necessary for the effective and efficient administration of law enforcement.'"  [Citations.]  The prosecution's authority in this regard is founded, among other things, on the principle of separation of powers, and generally is not subject to supervision by the judicial branch.  [Citations.]"  (*People v. Birks* (1998) 19 Cal.4th 108, 134 (*Birks*).)

That's not to say that parties should be allowed to game the system for their own advantage; our courts "'"are not gambling halls but forums for the discovery of truth."'  [Citations.]"  (*Birks, supra,* 19 Cal.4th at p. 127.)  And there is nothing to be gained by an "inaccurate all-or-nothing verdict when the *pleadings* and evidence suggest a middle ground[.]"  (*Ibid.*, italics added.)

But under our system of government, it's up to the prosecution to decide which charges to plead in the first place.  (*Birks, supra,* 19 Cal.4th at pp. 134–135.)  Just as a defendant cannot "'"require that a jury be told that he can be convicted of crime X when he has been charged with crime Y"'"  (*ibid.*), he has no right to insist that crime Y be charged in addition to crime X, because "'"the power to determine what crime he is charged with . . . *resides exclusively with the prosecution*.'"  [Citation.]"  (*Id.* at p. 134.)

In rare instances, selective prosecution can violate the constitutional right to equal protection under the law.  But the United States Supreme Court "'has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.'  [Citation.]  Even if two statutes encompass exactly the same conduct, there is no constitutional infirmity when the prosecution decides to charge [only] the harsher statute.  [Citation.]"  (*People v. Molina* (2004) 120 Cal.App.4th 507, 517-518.)

13

Appellant overlooks the fact the prosecutor's choice made conviction harder not easier. And if the jury had not been convinced of appellant's conscious disregard, they had the option to acquit, whereas the "solution" he now argues for would have guaranteed conviction in his case.

Appellant does not ascribe any discriminatory motive to the district attorney's decision to charge him with implied malice murder as opposed to gross vehicular manslaughter while intoxicated or a combination of both of those offenses. Nor has appellant shown the district attorney shirked his responsibility to govern impartially and pursue objectives that serve the ends of justice. As such, there is no basis to impugn his charging decision.

*Custody Credits*

Although the trial court awarded appellant 1,134 days of custody credit, the abstract of judgment does not reflect this award. We agree with the parties that the abstract must be amended to correct this oversight. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 188 [appellate courts may correct clericals error in the judgment].)

DISPOSITION

The abstract of judgment is amended to reflect appellant's entitlement to 1,134 days of presentence custody credit. The clerk of the trial court is directed to prepare a new abstract of judgment reflecting this change and send a certified copy to the Department of Corrections and Rehabilitation. Otherwise, the judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

15